UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL LANCE DAVIS,<br><br>               Plaintiff,<br><br>v.<br><br>CHRISTOPHER McCORMICK,<br><br>               Defendant. | Case No. 1:14-cv-00002-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendant Christopher McCormick's Motion for Summary Judgment (Dkt. 16). For the reasons that follow, the Court denies Defendant's motion.

## FACTUAL BACKGROUND[1]

On January 17, 2012, a briefing was presented by the Greater Idaho Fugitive Task Force ("Task Force"), a coalition of federal, state and local law enforcement agencies whose mission is to locate and arrest fugitives, to members of the Canyon County Sheriff's Office, Special Weapons and Tactics Team ("SWAT") team. Two members of the SWAT team were Defendant Officer Christopher McCormick ("Defendant" or "McCormick") and Officer Charles Gentry. During the briefing, the Task Force discussed an individual named Michael Lance Davis ("Plaintiff" or "Davis") who had an outstanding arrest warrant against him for charges of attempted strangulation, aggravated battery, and minor drug offenses. Davis was living in Nampa at the time. Davis was said to be attempting to purchase a handgun, had a toy gun which

---

[1] The Court draws the majority of these facts from Defendant's Statement of Facts. Where Plaintiff has disputed a fact, that is noted.

**Memorandum Decision and Order - 1**

was painted to look real, and had told sources he was considering suicide by cop. It was also reported that Davis might be high on methamphetamine.[2] McCormick Aff. ¶¶ 1, 8; Gentry Aff. ¶¶1, 8, 9.

Following the briefing, on the same January 17, 2012 date, a plan to apprehend Davis was put into place. First, a call was to be made into the residence where Davis was thought to be living to have the other occupants exit the house. Once they were out, the SWAT team would approach the house. Both Officer McCormick and Officer Gentry believed the situation could become dangerous based on the information provided. McCormick Aff. ¶¶ 9, 10 12; Gentry Aff. ¶¶ 10-12. The officers were on their way to the residence when they heard via police radio that Davis had left the residence and was running toward Skyview High School, located nearby in Nampa. The officers ran to intercept Davis before he could get to the high school, where a school function was then taking place. McCormick Aff. ¶¶ 13-16; Gentry Aff. ¶¶ 13-15.

Law enforcement chased and surrounded Davis and ordered him to get to the ground. He did not obey. It was dark outside, but the area was indirectly illuminated by the nearby high school.[3] McCormick Aff. ¶¶ 17-18; Gentry Aff. ¶¶ 16, 18, 20, 23, 25; Kane Aff. Ex. 1A, p. 9. McCormick says that Davis began to yell "shoot me, shoot me, f—king kill me" at law enforcement. There was something shiny in Davis's hand that appeared to McCormick and Gentry to be a handgun.[4] McCormick believed it to be a small Raven handgun. McCormick

---

[2] Plaintiff disputes the truth of these statements. But whether these statements were in fact true is not relevant to the Court's inquiry. The fact that Defendant was informed of these facts at the briefing goes to the reasonableness of his actions.

[3] It is unclear from the facts how close to the school the incident took place.

[4] Plaintiff takes issue with the photographs presented by Defendant of what Plaintiff's laser gun looked like and the photograph of the type of gun that Defendant believed Plaintiff to

**Memorandum Decision and Order - 2**

Aff. ¶¶ 18, 22-24; Gentry Aff. ¶ 22.

Davis denies yelling or saying anything to law enforcement. He states he never had anything in his hand or pretended to have anything in his hand. Davis also claims he has a plate in his right hand that doesn't allow him to close his thumb and makes it difficult to hold anything in that hand. Pl.'s Facts ¶ 5, 6, 27; Pl.'s Aff. at p. 3.

Officer Gentry discharged a taser on Davis. He says that Davis appeared to be unaffected and pulled the probes out. Gentry Aff. ¶¶ 27, 29; McCormick Aff. ¶ 20. Davis disputes that he pulled the probes out; instead, Davis says that the probes remained in his jacket. Pl.'s Facts ¶ 11. *See also* J. Gregory Police Report (Dkt. 18-3) (two taser probes and wires were still attached to the jacket after the incident).

According to the officers, Davis yelled at Gentry: "don't f—ing tase me." Davis then began yelling "I'm going to kill you" and pointing a gun at the officers. Davis next yelled: "I'm going to shoot you guys, 5, 4, 3 . . . ." Davis then raised his hand toward McCormick with what appeared (to McCormick) to be a silver handgun. McCormick then fired two shots at Davis, one hitting Davis's center mass. McCormick Aff. ¶ 25, 27; Gentry Aff. ¶¶ 29, 30, 32. Davis, however, says he never made any threatening statements or threatening movements. He also states that he had both hands up when he was shot and was not facing McCormick. Pl.'s Facts ¶¶ 5, 6, 12, 17, 18.

At the time Davis was shot, McCormick believed that he and other law enforcement officers, as well as the public, were in imminent danger of being shot. McCormick Aff. ¶ 29.

---

be carrying. The Court notes that Plaintiff disputes the accuracy of these photographs but does not find the dispute material to its decision on summary judgment.

**Memorandum Decision and Order - 3**

Gentry also believed Davis to be a threat to himself, other officers, and if he got into the school, to the public. Gentry Aff. ¶¶ 31, 33.

An ambulance was called and Davis was transported to a local hospital, where he was treated for the gunshot wound. McCormick Aff. ¶ 27. McCormick says that although an object was recovered at the scene, no weapon was recovered. *Id.* at ¶ 28.

On January 19, 2012, Officers Gregory and Kershaw from the Caldwell Police Department went to St. Alphonsus Medical Center in Boise to interview Davis about the shooting.[5] Both officers made reports of the interview. Kane Aff., Ex. 2, Ex. 3. Officer Kershaw read Davis the Miranda warning before beginning the interview. At the beginning of the interview, Davis said he had put himself in a bad situation by running when he "should have taken care of [his] courts." *Id.* Davis said he had a "little laser gun" but did not remember pulling it out. Davis recalled officer telling him to "stop, stop" and "get down, get down" and next remembered being in the ambulance. *Id.* According to the officers, Davis said that he assumed he "pulled the gun on them," and that he didn't want to go back to prison so his plan was to pull the gun if he was stopped and "I just wanted to die and that's all I know." *Id.* Davis said he did not recall talking to the officers when he was in the hospital because he was medicated and sedated. Pl.'s Facts ¶ 14.

On July 31, 2012, Plaintiff pleaded guilty to two counts of aggravated assault against law enforcement for the incident that occurred on January 17, 2012. *See* Kane Aff., Ex. 4.

---

[5] Both officers noted that Davis had bandages on his abdomen and an incision from his sternum to lower abdomen, presumably from the gunshot wound. *Id.*

**Memorandum Decision and Order - 4**

**STANDARDS**

**1.     Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . ." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-28 (1986).  There must be a genuine dispute as to any *material* fact- a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support

**Memorandum Decision and Order - 5**

the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

## 2. Qualified Immunity

Even if a plaintiff is able to show a violation of a constitutional right under § 1983, a defendant may still be entitled to summary judgment on the basis of qualified immunity. The doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id.* True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quotation omitted). Qualified immunity is a defense both to constitutional claims and to statutory claims, such as claims under RLUIPA. *See Lovelace v. Lee*, 472 F.3d 174, 198-99 (9th Cir. 2006).

**Memorandum Decision and Order - 6**

A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right" ; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Addressing the two prongs of the test in this order is often beneficial, but it is not mandatory. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

To determine whether the right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *Id.*

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. For the law to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand" that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not necessary that the "very action in question has previously

**Memorandum Decision and Order - 7**

been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent" to the official. *Id*. "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful." *Id.* However, if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). When a § 1983 defendant makes a properly supported motion for summary judgment based on qualified immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

## DISCUSSION

1. **Excessive Force**

Plaintiff Davis alleges that during an altercation with police on January 17, 2012, he was shot twice in the abdomen by Defendant McCormick, an officer with the Canyon County Sheriff's Office.  Plaintiff claims that before he was shot, he had lowered his hands to his sides

**Memorandum Decision and Order - 8**

and was not a threat to Defendant or the other officers around him.  Defendant McCormick moves for summary judgment contending that his actions did not violate Plaintiff's Fourth Amendment protections because he used reasonable force considering the totality of the circumstances.  Defendant also contends he is entitled to qualified immunity.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Officers are not required to use the least intrusive means available; they simply must act within the range of reasonable conduct.  *Brooks v. City of Seattle*, 599 F.3d 1018, 1025 (9th Cir. 2010).  To comport with the Fourth Amendment, officers' actions must be "objectively reasonable in light of the facts and circumstances confronting them."  *Graham*, 490 U.S. at 397.  This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id*. at 396.  It necessitates consideration of all the relevant circumstances, including: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect actively resists detention or attempts to escape."  *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (citing *Graham*, 490 U.S. at 388).  "[T]he jury must determine not only whether the officers were justified in using force at all, but, if so, whether the

**Memorandum Decision and Order - 9**

degree of force actually used was reasonable." *Santos v. Gate*, 287 F.3d 846, 854 (9th Cir. 2002).

The "most important" factor under *Graham* is whether the suspect posed an "immediate threat to the safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). "'A simple statement by an officer that he fears for his safety of the safety [of] others is not enough; there must be objective factors to justify such a concern.'" *Bryan*, 630 F.3d at 826. "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id*.

Whether an officer used excessive force under the Fourth Amendment is a question for the jury, which "almost always turn[s] on a jury's credibility determinations." *Smith*, 394 F.3d at 701. "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos*, 287 F.3d at 853.

A police officer may not use deadly force "unless it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985); *see also Graham*, 490 U.S. at 396 (holding the most important factor in determining reasonableness

**Memorandum Decision and Order - 10**

is "whether the suspect poses an immediate threat to the safety of the officers or others"). Thus, when a suspect threatens an officer with a gun or knife, the officer is typically justified in using excessive force. *Smith* 394 F.3d at 704. Situations in which courts have held that the use of deadly force *was* reasonable involve facts where there was *no dispute* that the suspect not only possessed a deadly weapon, but also actively used that weapon against officer. In *Wilkinson v. Torres*, 610F.3d 546, 549 (9th Cir. 2010), the suspect attempted to hit officers with a vehicle. In *Billington v. Smith*, 292 F.3d 1177, 1181-82 (9th Cir. 2002), the suspect violently attacked the officer and sought to turn the officer's own weapon against him, even when the officer attempted to retreat. In *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996), the suspect suddenly swung at the officer with a knife when the officer was in the process of physically subduing the suspect.

      There are undisputed facts in Defendant's favor. It is undisputed that Davis was convicted of two counts of aggravated assault upon a law enforcement officer. Davis pleaded guilty to violating Idaho Code §§ 18-915 (assault upon a law enforcement officer), 18-901(b) ("intentional, unlawful threat by word or act to do violence to the person of another, coupled with apparent ability to do so, and doing some act which creates a well-founded fear in such other person that violence is imminent") and 18-905(a) (assault with a "deadly weapon or instrument with intent to kill"). It is undisputed that Defendant and other officers at the task

**Memorandum Decision and Order - 11**

force briefing were told that Davis was trying to obtain a gun and was contemplating suicide by cop. Davis has admitted that he ran from the police, that he heard the officers yell "get down" and that he did not comply. He also admits he had a "laser gun/pointer"[6] on his person.

Indeed, if Defendant's versions of the facts are true and Plaintiff was holding something that appeared to be a gun to the officers (even if was not in fact a gun) and stated "I'm going to kill you . . . 5, 4, 3," then the use of deadly force would be objectively reasonable and Plaintiff's excessive force claim would fail. *See George v. Morris*, 736 F.3d 829, 839 (9th Cir. 2013) ("When an individual points his gun 'in the officers' direction,' the Constitution undoubtedly entitles the officer to respond with deadly force.") (citations omitted).

Despite these undisputed facts, there are genuine issue of material facts that preclude summary judgment for McCormick on Davis's excessive force claim. Davis denies saying anything threatening to the officers. He denies that he had the laser gun in his hand. He also states his hands were up when he was shot. While these statements might be at odds with his conviction, and to an extent with what he said in his statement (which he says he cannot remember) to police on January 19, 2012, the fact of his conviction does not foreclose his excessive force claim and his version of the facts. *See, e.g., Davis v. Clark*, 2010 WL 679037, *7 (D. Idaho Feb. 23, 2010) (finding that plaintiff's guilty plea to aggravated assault was not

---

[6] The parties differ in their description of this object.

**Memorandum Decision and Order - 12**

inconsistent with his claim of excessive force used by law enforcement defendants). In the summary judgment context, the Court must look at the version of the events most favorable to Plaintiff as the nonmoving party. *Anderson*, 477 U.S. at 255. Construing the facts in favor of Davis, a trier of fact could find that McCormick responded with excessive force to any threat raised by Davis's actions. The evidence does not *undisputably* show that Davis posed an immediate danger. Determining whether Davis in fact posed a risk to the officers or others justifying the response made is a fact intensive inquiry that requires a weighing of the facts and reasonable inferences therefrom. This is precisely the type of inquiry reserved for the trier of fact.

**2.    Qualified Immunity**

"For purposes of qualified immunity, [the court must] resolve all factual disputes in favor of the party asserting the injury." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013). Here, there are numerous factual disputes that prevent the Court from meaningfully characterizing the right at issue in this case. For example, if the jury finds that Plaintiff did not make any threatening statements and was not holding an object that resembled a gun, then the use of a firearm upon Davis by Defendant McCormick must be considered in light of those circumstances. The jury must also decide whether a reasonable officer would have believed Plaintiff posed a threat to the officers or public, after considering the disputed facts that are

**Memorandum Decision and Order - 13**

relevant to that question.  At this stage, the disputes must be resolved in Plaintiff's favor.

Because Plaintiff has established a genuine issue of material fact on his excessive force claim, those same genuine issues of material fact preclude the Court from granting summary judgment on the basis of qualified immunity.  Plaintiff is reminded, however, that establishing a genuine issue of material fact is not a guarantee of success at trial.  In this setting, this decision simply means that his claim will not be dismissed at this stage – Plaintiff still will have the burden of proving his claim at trial.

## ALTERNATIVE DISPUTE RESOLUTION

This case is now positioned to be set for trial.  Plaintiff shall consult with Defendant's counsel no later than 14 days after entry of this Order, to determine whether Plaintiff and Defendant are willing to attend a judicial settlement conference with a United States Magistrate Judge to attempt to settle the issues remaining for trial. If so, Defendant's counsel shall file a request for referral to a settlement conference. Otherwise, this case will be set for a jury trial.

## APPOINTMENT OF COUNSEL

If Plaintiff wishes to have pro bono counsel appointed, either to represent him at trial or at the settlement conference, or to have counsel in "stand-by" capacity, he shall file a request with the Court within 30 days after entry of this Order.  The pro bono coordinator and

**Memorandum Decision and Order - 14**

liaison will then attempt to find counsel willing to represent Plaintiff in a pro bono or other capacity. There is no guarantee that counsel can be found to represent Plaintiff.

## ORDER

**IT IS HEREBY ORDERED:**

1) Defendants' Motion for Summary Judgment (Dkt. 16) is **DENIED**.

2) Plaintiff shall consult with Defendants' counsel **no later than 14 days** after entry of this Order, to determine whether a judicial settlement conference should be set. If the parties agree, then Defendants' counsel shall file a request for referral to a settlement conference.

3) Plaintiff shall file a request for counsel, if so desired, within **30 days** after entry of this Order.

4) Consistent with what transpires as a result of the details described above, the Court will consider entering an order setting trial, with an accompanying pretrial order.

Dated: **September 28, 2015**

Honorable Ronald E. Bush
United States Magistrate Judge